UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RYAN GREER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-1007-M |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Ryan Greer brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record.[1] The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED AND REMANDED.

---

[1] Citations to the administrative record, Doc. No. 17, are as "R. __," using the pagination assigned by the SSA in the certified copy of the transcript of the administrative record. Citations to other documents filed in this Court adhere to the pagination assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on August 17, 2009. R. 133-39, 173. Plaintiff alleged a disability onset date of August 15, 2007, and sought benefits on the basis of Ankylosing Spondylitis. R. 164, 175. Following denial of his application initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 16, 2011. R. 18-64, 65-72, 75-80. The ALJ issued an unfavorable decision on October 27, 2011. R. 9-17. The SSA Appeals Council denied Plaintiff's request for review. R. 1-4. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 15, 2007, through his date last insured of December 31, 2010. R. 11; *see* 20 C.F.R. §§ 404.131, .1571. At step two, the ALJ determined that Plaintiff had the severe impairments of obesity, hypertension, migraines, fibromyalgia, and Ankylosing Spondylitis. R. 11-12; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on his impairments. R. 12-15; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e). The ALJ found that Plaintiff had the RFC to perform "the full range of work activity, compromised as follows":

> The claimant has the [RFC] to lift and carry 10 pounds occasionally and less than [10] pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot reach overhead. The claimant can frequently handle and finger. The claimant is to avoid concentrated exposure to hazards, such as unprotected heights and heavy machinery. The claimant cannot drive.

R. 12; *see* 20 C.F.R. § 404.1567.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a collection agent. R. 15; *see* 20 C.F.R. § 404.1520(f). At step five, the ALJ considered whether there are jobs that exist in significant numbers in the national economy that Plaintiff could perform in light of Plaintiff's age, education, work experience, and RFC. R. 16. Taking into consideration a vocational expert's testimony regarding the degree of erosion to Plaintiff's occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform the unskilled, sedentary-exertion occupations of callout operator, food and beverage order clerk, table worker, and surveillance systems monitor. R. 16. The ALJ held that all of these occupations offer jobs that exist in significant numbers in the national economy. R. 16; *see* 20 C.F.R. §§ 404.1520(g), .1545(a)(5)(ii), .1566. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from August 15,

2007, the alleged onset date, through December 31, 2010, the date last insured. R. 17. The SSA Appeals Council denied review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-4; *see also* 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

On appeal before this Court, Plaintiff argues that (1) the RFC was not supported by substantial evidence, (2) the ALJ erred in his analysis of treating physicians' opinions,

and (3) the ALJ erred by not following Social Security Ruling 83-20. Pl.'s Br., Doc. No. 20, at 16-33. The undersigned finds the first claim of error persuasive and, for the reasons set forth below, recommends that the decision of the Commissioner be reversed and remanded.

A. *Whether the RFC is Supported by Substantial Evidence*

An ALJ's decision must be based on substantial evidence in the record as a whole. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). An ALJ may not pick and choose among uncontroverted medical evidence, taking only those parts that are favorable to his position while ignoring other evidence. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Although "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record . . . ."). If the ALJ does not provide adequate reasoning for his decision so that judicial review is both "possible and meaningful," then the decision must be remanded. *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (citing *Clifton*, 79 F.3d at 1009); *cf. Washington*, 37 F.3d at 1439 ("Failure . . . to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." (internal quotation marks omitted)). Here, the ALJ's decision was flawed as set forth below.

1. Consideration of record evidence

An RFC assessment is a determination "of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). In determining the RFC, an ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "[T]he ALJ must make specific findings" in evaluating a claimant's RFC. *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). And those findings "must be supported by substantial evidence." *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . . In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted).

Here, the ALJ's analysis does not meet these standards because he "did not sufficiently set forth or consider relevant evidence" or adequately "describe how the evidence supported his RFC conclusions." *See Weigel*, 425 F. App'x 706, 708-09 (10th Cir. 2011). Instead, the ALJ simply stated that the physical restrictions in the RFC were "consistent [with] those identified by the State agency in the Physical Residual

6

Functional Capacity Assessment." R. 12-13 (citing Exhibit 6F, R. 318-25 (Feb. 20, 2010, Physical RFC Assessment by Mary Lanette Rees, MD)). The ALJ further noted that Dr. Rees' opinion was subsequently agreed with by another reviewing consultant and stated that he gave the two opinions "great weight." R. 13 (citing Exhibit 10F, R. 333 (Aug. 20, 2010, Case Analysis by J. Marks-Snelling, DO, which states in its entirety, "I have reviewed all of the medical evidence in file and the assessment of 2/20/2010 is affirmed as written.")).

As a primary error, the ALJ's RFC assessment materially differs from Dr. Rees' assessment on two points, and the ALJ does not explain these discrepancies. First, Dr. Rees limited Plaintiff to standing and walking to "a total of" "at least 2 hours in an 8-hour workday;" in contrast, the ALJ found in the RFC that Plaintiff "can stand and walk for about 6 hours during an eight-hour workday." *Compare* R. 12, *with* R. 319. The ALJ does not cite any additional medical evidence supporting the conclusion that Plaintiff could stand and walk for six, rather than two, hours a day. R. 12. Second, Dr. Rees found Plaintiff to be restricted in "[r]eaching *all* directions (including overhead);" the ALJ limited only Plaintiff's overhead reaching. *Compare* R. 12, *with* R. 321 (emphasis added). Again, the ALJ did not cite to any medical evidence to support his conclusion. R. 12. The ALJ did not explain his findings of greater physical abilities than the ones contained in the medical opinions on which he relied and to which he gave great weight—thus failing to provide sufficient analysis and reasoning to support his decision. *See Winfrey*, 92 F.3d at 1024 (finding that the RFC "did not accurately reflect plaintiff's exertional limitations" when ALJ relied upon a medical opinion but did not include

limitations contained therein).  As an ALJ is required to provide reasoning for his decision so that judicial review is both possible and meaningful, the failure to do so here requires remand.  *See Clifton*, 79 F.3d at 1009, 1010.

The ALJ's description of the medical evidence is also incomplete with respect to several of his conclusions.  *See Haga*, 482 F.3d at 1208 (holding that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only those parts that are favorable to a finding of nondisability").  Regarding Dr. Rees' opinion, the ALJ stated that Dr. Rees "noted [Plaintiff's] allegations of ankylosing spondylitis" and observed a "gait of normal pace" and "normal sensation and strength and function of the hands."  R. 12-13.  The ALJ, however, failed to include Dr. Rees' observations of compromised physical functioning:

> MER documents [reflecting diagnosis of Ankylosing Spondylitis] in 2007. Treated w/ pain meds, steroids, ultimately Humira/Remicade.  Markedly limited cervical spine [range of motion], fixed in slight flexion.  Moderately limited [range of motion] lumbar spine.  Painful [range of motion].

*Compare id*., *with* R. 319.  Likewise, regarding Plaintiff's activities of daily living, the description given by the ALJ differs significantly from that reported by Plaintiff.  The ALJ pointed to Dr. Rees' citation of Plaintiff's "extensive daily activities including driving, caring for children, socializing, preparing simple meals, reading, and picking up his children from school."  R. 13 (citing Exhibit 6F, R. 318-25).  The referenced account by Dr. Rees is more qualified, stating that Plaintiff does no household chores, drives "sometimes," socializes "but the pain causes friction sometimes," and "picks up kids from school 60% of the time."  *Compare* R. 13, *with* R. 323.  Moreover, Dr. Rees herself

8

had relied upon Plaintiff's "self-reported ADLs," as provided in a November 1, 2009 Function Report. *See* Exhibit 4E, R. 192-99; R. 323. A review of that Function Report shows that Plaintiff reported the following limitations in his daily activities:

- Drives "sometimes" "with difficulty" and "only rarely" goes out alone (R. 195);
- Cares for children by "fix[ing] cereal or sandwiches for them" "when [his] wife isn't home," and "keep[ing] the kids occupied so they aren't underfoot" as he is unable to do house or yard work (R. 193, 195);
- Socializes "in person with [his] family [they] watch a lot of TV and talk" and "[he doesn't] get to socialize often" and only "see[s] [his] extended family primarily at holidays" (R. 196, 197);
- Prepares meals of cereal and a sandwich but does not "cook at the grill or stove as [he] can't stand long enough" (R. 194); and
- Picks up kids from school by "rid[ing] along" (R. 195, 196).

*Compare* R. 13, 323, *with* R. 192-99. In short, the evolution that occurred over the course of the descriptions of Plaintiff's statement resulted in a material difference between the record evidence of Plaintiff's activities of daily living and the account of that evidence given by the ALJ.

"The record must demonstrate that the ALJ considered all of the evidence . . . ." *Clifton*, 79 F.3d at 1009. Here, the record does not do so. Because the ALJ considered some medical evidence to the exclusion of contrasting evidence, without adequate explanation, and relied on a view of Plaintiff's activities of daily living that was not supported by any cited evidence, the undersigned finds that the ALJ did not demonstrate that he properly considered all of the evidence. Remand is therefore required so the ALJ can set forth his reasons for "accepting or rejecting evidence." *See Clifton*, 79 F.3d at

9

1010; *Weigel*, 425 F. App'x at 709-10 (remanding because RFC decision was not supported by substantial evidence when ALJ did not "consider relevant evidence").

2. Limitations caused by other severe impairments

Despite finding that Plaintiff suffered from the severe, medically determinable impairments of obesity, migraine headaches, and fibromyalgia, and being presented with evidence of limitations caused by those impairments, the ALJ did not include in his RFC assessment the required analysis of these impairments and their related symptoms. *See* R. 11, 12-15; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g).

First, beyond initially finding that Plaintiff suffers from obesity and several times noting his past weight as recorded in the medical records, the ALJ provides no discussion of obesity or its effects in the RFC analysis. *See* R. 12-15. The Commissioner has adopted specific requirements for an analysis of the effects of obesity on a claimant's functioning. *See* SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002) (explaining that obesity can cause limitation of function and instructing adjudicators to assess the effect obesity has on the plaintiff's ability to do work at step four of the sequential analysis). "When [an ALJ] identif[ies] obesity as a medically determinable impairment . . . , [the ALJ] will consider any functional limitations resulting from the obesity in the RFC assessment . . . ." *Id.* at *7. In determining Plaintiff's RFC, the ALJ was required "to give adequate consideration to the effect of [Plaintiff's] obesity in combination with her other severe impairments." *See Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008); SSR 02-1p, 2002 WL 34686281, at *1, *5-6. Because an adjudicator is required to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental

limitations," it was error for the ALJ to fail to include any discussion of obesity in his RFC assessment. *See* SSR 02-1p, 2002 WL 34686281, at *7; *accord Fleetwood*, 211 F. App'x at 741-42 (finding that the ALJ failed to consider the effect of plaintiff's obesity on her ability to work and directing that, on remand, the ALJ "consider all of the available medical evidence and assess with a thorough and reasoned analysis the effect of all of [plaintiff's] impairments on her RFC").

Similarly, the ALJ found that Plaintiff suffers from migraine headaches, noting that Plaintiff testified he is disabled "due to migraines with associated vomiting" and that Plaintiff "estimated he has three to four migraines a month, with these headaches lasting one to three days." R. 11, 13. The RFC determination, however, does not reflect any functional restrictions associated with this severe impairment. *See* R. 12-15; SSR 02-1p, 2002 WL 34686281, at *7 (instructing ALJ to consider "limitations resulting from any . . . physical or mental impairments" in making the RFC assessment).

The ALJ also found that Plaintiff suffers from fibromyalgia and noted that Plaintiff testified he is disabled "due to musculoskeletal pain in the hands, neck, shoulders, arms, right foot, pelvis, hips, and back" and experiences "associated. . . muscle spasms and muscle cramps" that are "of sufficient severity to affect his ability to sleep." R. 11, 13. The Commissioner has adopted specific guidance for an ALJ's development of evidence and evaluation of fibromyalgia in disability claims. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012).[2] The RFC determination does not include any discussion

---

[2] SSR 12-2p was adopted after the date of the ALJ's decision but prior to the Appeals Council's denial of review. "Generally, if an agency makes a policy change during the

11

of the functional limitations caused by this impairment, despite the ALJ finding at step two that Plaintiff's fibromyalgia was severe. *See* R. 11, 12-15.

Having found that Plaintiff's obesity, migraine headaches, and fibromyalgia were "severe impairments" that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with those impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g); *accord Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less."). The ALJ did not follow this requirement, thereby undermining the RFC assessment and necessitating remand.

3. Credibility analysis

The assessment of a claimant's RFC at step four generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of. . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). The ALJ is required to closely and affirmatively link his credibility findings to substantial evidence in the record. *See id*. "Credibility

---

pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz*, 509 F.3d at 1302 (internal quotation marks omitted); *see Iles v. Colvin*, No. CIV-13-221-F, 2014 WL 1330010, at *1-4 (W.D. Okla. Mar. 31, 2014) (remanding case when ALJ did not have benefit of SSR 12-2p in issuing decision and the Court could not determine whether ALJ would have reached different conclusions by following SSR 12-2p).

determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). The Tenth Circuit set forth in *Wilson* an illustrative list of factors that should be considered in assessing the credibility of subjective complaints, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted); *see also* SSR 96-7p, 1996 WL 473186, at *3.

Here, the ALJ recited Plaintiff's testimony of functional restrictions on "writing, movement of the joints, raising the arms overhead, lifting, walking, driving, standing, and keyboarding." R. 13. The ALJ also noted that Plaintiff had been prescribed a mobility scooter and a handicapped parking permit. R. 13. The ALJ further relayed that Plaintiff stated "he is unable to cook or wash dishes" and "requires assistance with dressing." R. 13. The ALJ noted that Plaintiff's wife corroborated Plaintiff's testimony, stressing Plaintiff's poor memory and difficulty dressing and caring for his personal hygiene. R. 13. The ALJ discounted this testimony upon concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the statements of [Plaintiff] and his wife concerning the intensity, persistence

13

and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 13-14.

In support of his finding that the above testimony was not credible, the ALJ pointed to Plaintiff's November 1, 2009 Function Report, wherein Plaintiff "described daily activities including childcare, pet care, and shopping." R. 14 (citing Exhibit 4E, R. 192-99). The undersigned has previously discussed the limited child-care activities shown in the record, *see* discussion *supra* Part A.1. Plaintiff reported his pet-care activities as, "We have a fish that I sometimes feed," R. 193, and his shopping activities as in "some" stores "w/carts" for "a couple of hours" by "riding in a cart while [his] wife shops." R. 195. Because Plaintiff reported that his impairments and accompanying pain severely limit his ability to engage in these activities, it does not necessarily follow that the minimal activity actually performed by Plaintiff diminishes Plaintiff's credibility regarding the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms. *See Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that plaintiff's lifestyle consisting of limited and sporadic activities "does not contradict a claim of disabling pain" and ALJ's citation of such daily activities did not indicate substantial evidence refuting plaintiff's credibility or claims of pain).

The remainder of the ALJ's justification for finding the testimony of Plaintiff and his wife not fully credible is similarly flawed. The ALJ stated that Plaintiff did not need special reminders to take care of personal needs and grooming but omitted that Plaintiff needed help or reminders to take his medicine. *Compare* R. 14, *with* R. 194. The ALJ stated that Plaintiff "indicated that he had no limitations on memory, completing tasks,

understanding, and following instructions," but failed to discuss or distinguish statements by Plaintiff to the contrary. *Compare* R. 14, *with* R. 194 (needs reminders for medicine because they make him "groggy"), R. 196 (needs to be reminded to go places), *and* R. 197 (has difficulty paying attention "when meds are high;" has difficulty following spoken instructions when "my meds are peaking"). Further, the ALJ stated that Plaintiff testified that "he could play video games for an hour at a time," and found that "this activity indicates that [Plaintiff] retains the functional ability for sedentary work." R. 14. Aside from the fact that the ability to engage in one hour of sedentary activity does not necessarily indicate the functional ability for a full day of sedentary work, Plaintiff's precise testimony regarding his video game activity was he could play "maybe an hour at most and, generally, I fall asleep." R. 47-48; *see Frey*, 816 F.2d at 516-17 ("[S]poradic performance does not establish that a person is capable of engaging in substantial gainful activity." (citing *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983)).

Finally, the medical reports that the ALJ refers to in concluding that the testimony of Plaintiff and his wife was not fully credible contained not only the negative findings cited by the ALJ but also findings that support these individuals' testimony. *Compare* R. 14, *with* R. 247-49 (Nov. 30, 2007 exam notes from Plaintiff's rheumatologist indicating a diagnosis of Ankylosing Spondylitis, "progressive and severe" pain, "unable to straighten his head for about a year and a half," BASDAI score[3] of 8.3, severe fatigue,

---

[3] A BASDAI score refers to the Bath Ankylosing Spondylitis Disease Activity Index, which is a tool for assessing Ankylosing Spondylitis disease activity. *See* Abstract, S. Garrett et al., *A New Approach to Defining Disease Status in Ankylosing Spondylitis: The Bath Ankylosing Spondylitis Disease Activity Index*, 21 J. Rheumatology 2286, *available*

weakness, multiple pain medications, severe limitation in range of motion in his cervical spine, occiput wall at 15 cm[4]), R. 244-45 (Feb. 13, 2008 exam notes from Plaintiff's rheumatologist reflecting Ankylosing Spondylitis definite on x-ray, BASDAI score of 7.2, anterior bony bridging through the cervical spine, bamboo spine throughout lumbar spine, bilateral sacroiliac joints ankylosed, squaring and ankyloses of the thoracic spine, multiple pain medications, severe limitation in range of motion in his cervical spine, occiput wall at 19 cm), *and* R. 297-303 (Dec. 21, 2009 exam notes from state consultative physician indicating diagnoses of Ankylosing Spondylitis, chronic neck pain, and chronic back pain; trace movements in all planes of the cervical spine; bilateral tenderness; neck fixed in slight flexion; limited flexion in all planes of the lumbar spine; "an essentially fused cervical spine"; limited range of motion of the lumbar spine and left shoulder); *compare* R. 15, *with* R. 335-36 (May 10, 2011 exam notes from Plaintiff's neurologist indicating cervical dystonia, Ankylosing Spondylitis, muscles spasms, and myoclonic jerks; increased dosage of Botox injections), *and* R. 22-23, 52-56, 339-40,

---

*at* http://www.ncbi.nlm.nih.gov/pubmed/7699630 (last visited Feb. 23, 2015). Scores range from 0 to 10, and scores of 4 or greater suggest suboptimal control of the disease. *See* BASDAI, http://basdai.com (last visited Feb. 23, 2015).

[4] The occiput-to-wall ("OWD") distance measurement is a routine clinical test for cervical spine mobility. The OWD is measured by having an examinee stand with his or her back against a wall, keeping posture as straight as possible, with the heels, buttocks and shoulders touching the wall. While looking forward, the examinee attempts to have the back of the head (the occiput) touch the wall. In most normal individuals, the occiput will touch the wall, and the OWD measurement will be zero. If the occiput does not touch the wall, the OWD is measured, with a value greater than 2 cm being considered abnormal. *See National Health and Nutrition Examination Survey: 2009-2010 Data Documentation, Codebook, and Frequencies* (Sept. 2011), http://wwwn.cdc.gov/nchs/nhanes/2009-2010/ARX_F.htm.

342, 355 (all reflecting that Plaintiff sought medical treatment between September 2009 and December 31, 2010, in contradiction to the ALJ's statement that Plaintiff did not seek medical treatment during that time period).

In reviewing the record as a whole, it is clear that the ALJ's evaluation of Plaintiff's subjective complaints was "flawed by his reliance on factors that were not supported by the record and by his failure to consider other factors that were supported by the record." *See Winfrey*, 92 F.3d at 1021; *Wilson*, 602 F.3d at 1145. This matter should be remanded for further evaluation of Plaintiff's credibility, including assessment of Plaintiff's and his wife's testimony regarding Plaintiff's pain and subjective symptoms in accordance with the authorities cited above.

B. *Whether the ALJ's Decision Otherwise Contains Reversible Error*

Based on the recommendation that this matter be reversed and remanded, as set forth above, the undersigned need not address the remaining claims of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). Of note, however, the Commissioner upon remand should be mindful that medical records that postdate the time period at issue are to be considered for their relevance to the pertinent time period and not dismissed simply because they were generated past the claimant's last-insured date. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (finding that it was legal error if ALJ did not consider medical evidence because it postdated claimant's last-insured date); *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) ("Evidence bearing upon an

applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." (alteration and internal quotation marks omitted)).

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 23, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 9th day of March, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE